**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| EUSTACIO ABAD JIMENEZ ROMANO<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Attorney General of the United States;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles ICE Field Office; and<br><br>WARDEN, Adelanto ICE Processing Center<br><br>Respondents. | Case No.: ____________<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

1. Petitioner, EUSTACIO ABAD JIMENEZ ROMANO ("Petitioner"), through undersigned counsel, respectfully petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by Immigration and Customs Enforcement ("ICE") since April 8, 2026.

2. On April 8, 2026, an ICE Fugitive Operations Team conducted "a fugitive operation to locate LUCAS ROSARIO" at Rosario's last known address in Corona, California. Ex. A at 4; Declaration of Cesar O. Montoya ("Montoya Decl.") ¶ 7. Petitioner is not Lucas Rosario. Officers saw "a male matching the physical description of LUCAS ROSARIO" get into a vehicle, believed "the male driver . . . was the target," and stopped Petitioner's car. Ex. A at 4. **After Petitioner produced a California identification card and admitted that he lacked status, officers arrested him on the spot, without a warrant.** *Id.* at 4–5. The Form I-213 records nothing else.

3. That is not enough. Congress permits a warrantless civil immigration arrest only where the officer has reason to believe both that the person is unlawfully present **and** that he **"is likely to escape before a warrant can be obtained for his arrest."** 8 U.S.C. § 1357(a)(2). **The I-213 records the first finding but not the second.** ICE's own policy required officers to "document in

the narrative section of the Form I-213 . . . all factors considered in determining that the alien was likely to escape before a warrant could be obtained." *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *28 (C.D. Cal. Sept. 2, 2026) (amended order granting in part motion for preliminary injunction re: warrantless arrests, Dkt. No. 529; amending Dkt. No. 704) ("*Preliminary Injunction Order*") (quoting *Memorandum of Todd M. Lyons, Re: Civil Immigration Arrest Authority*, at 5 (Jan. 28, 2026) (the "*Lyons Memo*")). The narrative documents none. Petitioner is therefore a member of the Warrantless Arrest Class certified in *Vasquez Perdomo*: **"[a]ll persons, since June 6, 2025, who have been arrested or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape."** *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2752137, at *24 (C.D. Cal. Sept. 2, 2026) (amended order granting in part motion to certify class, Dkt. No. 531; amending Dkt. No. 705) ("*Class Certification Order*").

4. The I-213 also confirms that nothing about Petitioner suggested a risk of escape. It records that DHS's "[r]ecord checks for outstanding wants, warrants and lookouts were negative," that Petitioner was arrested "without further

incident," and that the only determination officers made was that he "was in the U.S. illegally and was amenable to enforcement action." Ex. A at 4–5; Montoya Decl. ¶ 8. That phrase, "amenable to enforcement action," describes removability. It is not an individualized assessment of escape risk.

5. The custody hearing Petitioner eventually received did not cure the problem. On August 4, 2026, nearly four months after his arrest, the Immigration Judge placed the burden on Petitioner and denied bond on flight risk alone, citing "the surreptitious entry into the United States and overly speculative pathway to relief." Ex. B at 1. Those are the reasons a court in this District has held improper. *Garcia Del Solar v. Mullin*, No. EDCV 26-5360-AS, 2026 WL 3027139, at *2–4 (C.D. Cal. Oct. 8, 2026). Six weeks later, Petitioner filed his application for cancellation of removal, based on twenty years of residence and the hardship his removal would cause his three United States-citizen children. Ex. C; Montoya Decl. ¶¶ 4, 12.

6. Courts in this District have ordered immediate release on both kinds of record. Where an Immigration Judge denied bond by "relying on improper, generalized reasons without an individualized assessment," the court found "no basis for Petitioner's continued detention" and ordered him released. *Garcia Del Solar*, 2026 WL 3027139, at *2, *4. And courts have ordered release where ICE

arrested a person without a warrant during an operation targeting someone else, including where officers believed the petitioner matched the target's description. *Sanchez Marquez v. Warden, Desert View Facility*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *1, *6–7 (C.D. Cal. Oct. 1, 2026); *Tellez-Serrano v. Semaia*, No. 5:26-cv-04183-BFM, 2026 WL 2574829, at *1, *4–6 (C.D. Cal. Aug. 31, 2026); *Dominguez v. Janecka*, No. 5:26-cv-04540-BFM, 2026 WL 2574835, at *1, *3–6 (C.D. Cal. Aug. 31, 2026); *Valtierra Moreno v. Mullin*, No. 5:26-cv-04291-MAR, 2026 WL 2844961, at *3 (C.D. Cal. Sept. 22, 2026).

7. Counts One and Two allege that the April 8 warrantless arrest violated 8 U.S.C. §§ 1357(a)(2) and 1226(a), and that Petitioner's custody commenced without the warrant and initial custody determination § 1226(a) requires. Count Three alleges that the absence of those safeguards violated due process. Count Four, pleaded in the alternative, alleges that the August 4, 2026 custody decision did not apply the correct legal standard. Count Five, also pleaded in the alternative, raises an as-applied challenge to the burden of proof for a detainee whose custody began unlawfully and has now exceeded six months. Petitioner does not ask the Court to reweigh the evidence. He asks for **immediate release; an order barring re-detention absent notice and a pre-deprivation hearing; and an order directing Respondents to lodge the complete arrest and custody record.** In the

alternative, he asks for a new custody hearing at which Respondents bear the burden by clear and convincing evidence. Petitioner's individual hearing on his application for cancellation of removal is set for November 30, 2026. Montoya Decl. ¶ 13. He respectfully requests expedited consideration.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is in federal custody and alleges that his custody violates the Constitution and laws of the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Court also has jurisdiction under 28 U.S.C. § 1331, and may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and relief under the All Writs Act, 28 U.S.C. § 1651.

9. No jurisdictional bar applies. Section 1226(e) "does not strip a district court of its traditional habeas jurisdiction," nor does it "'bar constitutional challenge[s].'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Section 1252(g) "applies only to 'those three specific actions themselves,'" and does not reach challenges to detention. *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 U.S. Dist. LEXIS 106210, at *9 (C.D. Cal. May 13, 2026) (quoting *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025)). Section 1252(b)(9) does not

apply either, because the Supreme Court has rejected an "expansive interpretation" of that provision under which detention claims would be "effectively unreviewable." *Nola*, 2026 U.S. Dist. LEXIS 106210, at *10 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality)). Nor does § 1226(e) bar review of Count Four. Although a court may not reweigh the evidence before the Immigration Judge, "it is authorized to review the IJ's decision under an 'abuse of discretion' standard to assess whether the IJ 'applied the correct legal standard.'" *Garcia Del Solar*, 2026 WL 3027139, at *2 n.4 (quoting *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024)); *see also Villa v. Mullin*, 834 F. Supp. 3d 957, 963 (C.D. Cal. 2026) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *2 n.4). Petitioner does not seek review of any removal order.

10. Venue is proper because Petitioner is confined at the Adelanto ICE Processing Center in Adelanto, California, within this District and Division, and his immediate custodian is located here. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). The challenged arrest also occurred in Corona, California, within this District. Montoya Decl. ¶ 6.

**III. PARTIES**

11. Petitioner EUSTACIO ABAD JIMENEZ ROMANO, A-Number 221-462-477, is a native and citizen of Mexico who has resided in the United

States since in or about October 2006. Montoya Decl. ¶ 3. He is detained at the Adelanto ICE Processing Center in Adelanto, California. *Id.* ¶ 6.

12. Respondents are MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID J. VENTURELLA, Acting Director of ICE; ERNESTO SANTACRUZ JR., Acting Director of the Los Angeles ICE Field Office; and the WARDEN of the Adelanto ICE Processing Center. Each is sued in his or her official capacity and is a legal custodian of Petitioner or responsible for the decisions challenged here.

## IV. STATEMENT OF FACTS

### A. Petitioner's Family and Community Ties.

13. Petitioner last entered the United States in or about October 2006 and has lived here for twenty years. Montoya Decl. ¶ 3. He has three children, all United States citizens; two are minors. *Id.* ¶ 4. His removal proceedings remain pending before the Adelanto Immigration Court, and his individual hearing is set for November 30, 2026. *Id.* ¶ 13; Ex. D at 1. On September 15, 2026, he filed an application for cancellation of removal and adjustment of status for certain nonpermanent residents (Form EOIR-42B). Montoya Decl. ¶ 12; Ex. C.

14. Petitioner has no criminal convictions. Montoya Decl. ¶ 5. In the interest of candor, Petitioner's EOIR-42B discloses two arrests in Riverside County, California, in 2009 and 2010. *Id.* As stated in that application, the 2009 arrest under California Penal Code section 647(f) was not prosecuted to conviction and has been the subject of arrest-record relief, and the 2010 charge under California Health and Safety Code section 11377(a) was resolved through deferred entry of judgment under California Penal Code section 1000, which Petitioner successfully completed, resulting in dismissal of the charge on December 8, 2011. *Id.* The I-213 records that DHS's "[r]ecord checks for outstanding wants, warrants and lookouts were negative." Ex. A at 5.

**B. The April 8, 2026 Warrantless Arrest.**

15. On April 8, 2026, "a fugitive operation to locate LUCAS ROSARIO" was conducted by Fugitive Operations Team 1 ("FOT 1") "at his last known address" in Corona, California. Ex. A at 4. "At approximately 0545, FOT 1, observed a male matching the physical description of LUCAS ROSARIO, walk out of the apartment complex, and get into a Black Nissan Xterra. At this time, FOT 1 established reasonable suspicion that the male driver of the Black Nissan Xterra was the target, LUCAS ROSARIO." *Id.*

16. "At approximately 0550, FOT 1 approached the vehicle, after it departed, in full tactical gear physically identifying themselves as 'POLICE-ICE.'" *Id.* When officers asked for identification, Petitioner "provided a California ID bearing the name JIMENEZ ROMANO, EUSTACIO ABAD." *Id.* After Petitioner "self-admitted to being in the country illegally" and a records check reported "no immigration history," "FOT 1 established probable cause that JIMENEZ ROMANO was in the U.S. illegally and was amenable to enforcement action." *Id.* at 4–5. "At 0600, FOT 1 arrested JIMENEZ ROMANO without further incident." *Id.* at 5.

17. **The I-213 contains no statement that any officer believed Petitioner was likely to escape before a warrant could be obtained.** It does not contain the phrases "likely to escape," "before a warrant," "flight risk," or "escape risk," or any similar language. Montoya Decl. ¶ 8. It records that DHS's "[r]ecord checks for outstanding wants, warrants and lookouts were negative," and that Petitioner "will be served with a Notice to Appear, forms I-862 and will remain in ICE custody." Ex. A at 5. No Form I-200 warrant, Form I-286, or record of an initial custody determination has been produced. Montoya Decl. ¶ 10.

18. The I-213 also contains internal inconsistencies. After describing Petitioner's arrest, it states that "FOT 1 transported CALDERON to the San

Bernardino Ice Sub-Office for case processing," although no person by that name appears elsewhere in the available pages. Ex. A at 5. And although it lists Petitioner's file number as "221 462 477," its "Record of Deportable/Excludable Alien" section lists his A-number as "A 221 462 277." *Id.* at 4; Montoya Decl. ¶ 9.

**C. The August 4, 2026 Custody Decision.**

19. On July 30, 2026, the Ninth Circuit held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 183 F.4th 1160, 2026 U.S. App. LEXIS 22798, at *12 (9th Cir. July 30, 2026) ("*Bostock*"). On August 4, 2026, nearly four months after his arrest, Petitioner received a custody hearing. The Immigration Judge denied bond because "the respondent failed to meet his burden to establish that he is not a flight risk." Ex. B at 1. The order identifies two factors: "The Court considered all flight risk factors, including the surreptitious entry into the United States and overly speculative pathway to relief." *Id.* It states that "[g]iven the foregoing finding on flight risk, the Court did not reach any determination on jurisdiction or danger," and that "[t]he burden of proof was placed on the respondent by a preponderance of the evidence." *Id.* The order does not mention any alternative to

detention, Petitioner's twenty years of residence, or his United States-citizen children. *Id.* at 1–2. Montoya Decl. ¶ 11.

20. DHS and Petitioner each reserved appeal, and no appeal was filed. Ex. B at 2; Ex. D at 2. Six weeks after the Immigration Judge described Petitioner's pathway to relief as "overly speculative," Petitioner filed his application for cancellation of removal. Ex. C; Montoya Decl. ¶ 12. Petitioner has now been detained for more than six months. Montoya Decl. ¶ 14.

## V. LEGAL ARGUMENT

### A. A Warrantless Civil Immigration Arrest Requires Two Independent, Pre-Arrest Findings.

21. "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012) (as quoted in *Valtierra Moreno*, 2026 WL 2844961, at *2). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). **"If no federal warrant has been issued, [federal immigration] officers have more limited authority."** *Arizona*, 567 U.S. at 408. An officer may arrest without a warrant only if he "has reason to believe that the alien so arrested is in the United States in violation of any

such law or regulation **and** is **likely to escape before a warrant can be obtained for his arrest**." 8 U.S.C. § 1357(a)(2) (emphasis added). **"A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."** 8 C.F.R. § 287.8(c)(2)(ii) (as quoted in *Valtierra Moreno*, 2026 WL 2844961, at *2–3).

22. "Reason to believe" is the equivalent of probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980) (as cited in *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *4, *17). The two requirements are conjunctive: "Section 1357(a)(2) requires that the arresting officer reasonably believe that the alien is in the country illegally *and* that she 'is likely to escape before a warrant can be obtained for [her] arrest.'" *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) (emphasis added) (as quoted in *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *21). **"[T]o permit an officer to make the required likelihood of escape determination simply by determining that an individual is unlawfully present in the United States would render the language regarding the likelihood of escape determination superfluous."** *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *19. The determination must be made before the

arrest; conduct "during or after the arrest" cannot supply it. *Ramirez Perez v. Chestnut*, No. 1:26-cv-00277-DJC-CKD P, 2026 WL 2123306, at *4 (E.D. Cal. July 22, 2026) (findings and recommendations). "**Respondents' belief that Petitioner was present in the United States unlawfully does not in and of itself result in an assumption that Petitioner was likely to escape before Respondents could obtain a warrant.**" *Diaz Escalante v. LaRose*, No. 3:26-cv-04259 LEK-AHG, 2026 WL 2364792, at *4 (S.D. Cal. Aug. 14, 2026).

**B. The I-213 Shows ICE Arrested a Collateral Person After Establishing Only Alienage.**

23. Petitioner was what ICE calls a "collateral": someone "who is not identified as the target of the enforcement operation." *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *5 n.5. A deportation officer testified in *Vasquez Perdomo* that officers **"basically are able to take a collateral into custody as long as we are able to establish alienage,"** and the court found that **"deportation officers have been instructed that they may conduct warrantless arrests of individuals without consideration of the individual's likelihood of escape."** *Id.* at *6. ICE's own policy requires the opposite: an officer's "analysis as to the likelihood of escape must be specific to each [noncitizen] arrested." *Id.* (alteration in original) (quoting *Lyons Memo* at 5).

24. Petitioner's I-213 follows that pattern. It identifies the target of the operation as "LUCAS ROSARIO," and records that officers stopped Petitioner's vehicle because they believed "the male driver . . . was the target." Ex. A at 4. When Petitioner identified himself, officers did not release him. They established only that he "was in the U.S. illegally and was amenable to enforcement action," and arrested him. *Id.* at 4–5. **The I-213 records no likelihood-of-escape determination, no facts bearing on escape, and no reason a warrant could not be obtained.** Whatever basis ICE had to seize its target could not be transferred to Petitioner because officers believed he resembled Rosario: probable cause "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another." *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *17 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). The *Lyons Memo*, issued more than two months before this arrest, directs that officers "shall document in the narrative section of the Form I-213 . . . all factors considered in determining that the alien was likely to escape before a warrant could be obtained." *Id.* at *28 (quoting *Lyons Memo* at 5). "'Shall' means 'must.'" *Id.* (quoting *Bufkin v. Collins*, 604 U.S. 369, 379 (2025)). Petitioner's I-213 documents no such factors.

25. The closest decision is *Sanchez Marquez*. There, ICE officers arrested the petitioner without a warrant "as part of an at-large operation targeting another individual," after approaching him because he "closely matched the known physical description" of the target and he admitted lacking status. *Sanchez Marquez*, 2026 WL 2948874, at *1, *6. The government's own evidence "confirm[ed] that ICE officers arrested Petitioner without a warrant" and "provide[d] no indication that they conducted a risk-of-escape analysis before doing so." *Id.* at *6. The court held that the arrest and detention "violated 8 U.S.C. § 1226(a) and due process" and ordered immediate release. *Id.* at *6–7. Other courts in this District have done the same where ICE arrested a person who "looked like" its target. *Tellez-Serrano*, 2026 WL 2574829, at *1, *4–6; *Dominguez*, 2026 WL 2574835, at *1, *3–6.

26. Nor do the facts Respondents recorded suggest escape risk. ICE's guidance, as the Government construed it in *Vasquez Perdomo*, asks whether the individual "is unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained." *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *5, *20 (quoting *Lyons Memo* at 3). Petitioner was driving, produced a California identification card bearing his name, answered officers' questions, and was arrested "without further

incident." Ex. A at 4–5. DHS's "[r]ecord checks for outstanding wants, warrants and lookouts were negative." *Id.* at 5. In *Diaz Escalante*, where an entrant without inspection was stopped while driving, the record was "devoid of evidence" that he was "likely to escape," and his role as a father of three supported "the inference that Petitioner was not likely to escape before a warrant could be obtained." *Diaz Escalante*, 2026 WL 2364792, at *1, *4. Petitioner, too, is the father of three United States-citizen children. Montoya Decl. ¶ 4.

27. Finally, the I-213 is not entitled to a presumption of regularity that overcomes this record. "[T]he presumption is rebuttable," *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *22 (citing *Cruz v. Bondi*, 146 F.4th 730, 740 (9th Cir. 2025)), and this I-213 contains no escape analysis at all while reporting that officers "transported CALDERON" for processing after arresting Petitioner, and listing an A-number that does not match Petitioner's file number. Ex. A at 4–5.

**C. Petitioner Is a Member of the Certified Warrantless Arrest Class.**

28. On September 2, 2026, the *Vasquez Perdomo* court certified the Warrantless Arrest Class under Rule 23(b)(2). *Vasquez Perdomo*, *Class Certification Order*, 2026 WL 2752137, at *24. Petitioner satisfies each element: he was arrested after June 6, 2025, in this District, for an alleged immigration

violation; Respondents have produced no warrant; and the I-213 contains no individualized pre-arrest assessment that he was likely to escape. This Petition is not duplicative of the class action, which seeks prospective, district-wide relief, not Petitioner's release from present custody.

**D. Petitioner's § 1226(a) Custody Never Lawfully Commenced.**

29. Section 1226(a) custody begins with a warrant or a lawful warrantless arrest, followed by "an initial custody determination" in which DHS decides whether to release or detain the person. *Sanchez Marquez*, 2026 WL 2948874, at *3 (citing 8 C.F.R. § 236.1(c)(8)). "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). The initial custody review "ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis," and it is the mechanism by which a detainee is told he may seek review before an Immigration Judge. *Sanchez Marquez*, 2026 WL 2948874, at *5. Courts have therefore held that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Id.* (citation omitted).

30. Petitioner received none of that process. No Form I-200, Form I-286, or record of an initial custody determination has been produced. Montoya Decl. ¶ 10. The I-213 identifies no detention authority and records only that Petitioner "will remain in ICE custody." Ex. A at 5. A court in this District has relied on nearly identical language to find that DHS treated a petitioner as a mandatory detainee. *Tellez-Serrano*, 2026 WL 2574829, at *1. **Petitioner received no custody hearing of any kind until August 4, 2026, nearly four months after his arrest.** Ex. B at 1. His detention was therefore "unlawful from its inception." *Tellez-Serrano*, 2026 WL 2574829, at *4 (quoting *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026)). And that **"unlawfulness cannot be cured through belated compliance with statutory requirements."** *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR (HC), 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026).

31. The 48-hour provision of 8 C.F.R. § 287.3(d) does not validate the arrest. "[C]ompliance with the procedural requirements under Section 287.3 says nothing about whether the preceding arrest itself complied with Section 1357(a)(2), and the regulation itself presumes a noncitizen's arrest is made consistent with the statute." *Diaz Escalante*, 2026 WL 2364792, at *4. A Form I-200 generated during

post-arrest processing cannot retroactively authorize a warrantless arrest. *See id.*; *Sanchez Marquez*, 2026 WL 2948874, at *6 n.1 (observing that "it appears that [the I-200] was issued after ICE completed Petitioner's warrantless arrest").

**E. The Fifth Amendment Required the Process Congress Built Into the Arrest and Custody Framework.**

32. The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "An alien, such as Petitioner, who builds a substantial life in the United States over a period of many years after entering without inspection develops a constitutionally protected liberty interest in remaining out of custody." *Reyes v. Santacruz*, No. ED CV 26-3394-E, 2026 U.S. Dist. LEXIS 154708, at *5 (C.D. Cal. July 13, 2026). Petitioner has lived in the United States for twenty years, since in or about October 2006, and is the father of three United States-citizen children, two of whom are minors. Montoya Decl. ¶¶ 3–4. *See Villa Cambron v. Johnson*, No. 5:26-cv-04624-KES, 2026 WL 2584950, at *5 (C.D. Cal. Sept. 1, 2026) (finding that "twenty years of residence in the U.S., as well as his familial and financial connections here, further support a finding that he has a protected interest in remaining free from immigration custody").

33. Due process “requires some kind of a hearing before the State deprives a person of liberty or property.” *Cardenas v. Giles*, No. 8:26-cv-02322-ACCV, 2026 WL 2722730, at *3 (C.D. Cal. Sept. 14, 2026) (quoting *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990))). Section 1226(a)’s procedures “are also grounded in due process principles”; “due process requires the Government to exercise [its] discretion and determine, on an individualized basis, whether to detain or release a noncitizen under the statute.” *Sanchez Marquez*, 2026 WL 2948874, at *4. Without that determination, there is “an unacceptably high risk” that confinement is not “‘reasonably related’ to a legitimate purpose.” *Id.* (quoting *Zadvydas*, 533 U.S. at 690). Where pre-deprivation process is feasible, post-deprivation process does not suffice. *Zinermon*, 494 U.S. at 128, 132, 136–38. Here the deprivation was predictable, the required determination was possible, and the officers acted under delegated arrest authority.

34. The *Mathews* factors confirm the violation. Courts weigh "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural

requirements." *Cardenas*, 2026 WL 2722730, at *3 (citation modified) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Each factor favors Petitioner.

35. *First*, the private interest is "the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (as quoted in *Cardenas*, 2026 WL 2722730, at *3); *see also Rodriguez Diaz*, 53 F.4th at 1207 (recognizing that "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial'" (quoting *Singh*, 638 F.3d at 1208)). That interest is concrete here. Petitioner has lived in the United States for twenty years, is the father of three United States-citizen children, two of them minors, and has no criminal convictions. Montoya Decl. ¶¶ 3–5. He has been detained since April 8, 2026, more than six months. *Id.* ¶ 14.

36. *Second*, the risk of erroneous deprivation under the procedures Respondents actually used was as high as it could be, because they used none. Officers stopped Petitioner during an operation to arrest someone else, because they believed he was that person, and arrested him when he admitted that he lacked status. Ex. A at 4–5. No warrant preceded the arrest, no officer recorded any assessment of escape risk, and no initial custody determination has been produced. Montoya Decl. ¶¶ 8, 10. **The safeguards Petitioner was denied are exactly the**

**ones that guard against that error. An initial custody review "ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis" and "create[s] a record that permits meaningful review of whether the required procedure occurred."** *Sanchez Marquez*, 2026 WL 2948874, at *5 (citation omitted). **Without it, "a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one," and "a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified."** *Id.* Petitioner was held nearly four months before any custody hearing. Ex. B at 1.

37. Had officers asked whether Petitioner was likely to escape before a warrant could be obtained, the record shows the answer was no. He was driving, produced identification bearing his name, had no outstanding wants or warrants, and submitted to arrest "without further incident." Ex. A at 4–5. "[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker." *Villa Cambron*, 2026 WL 2584950, at *6 (quoting *Perez Bueno v. Janecka*, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026)).

38. *Third*, the Government's interest in dispensing with these safeguards is minimal. The warrant requirement, the escape determination, and the initial custody review already exist by statute, regulation, and ICE's own policy. 8 U.S.C. § 1357(a)(2); 8 C.F.R. §§ 236.1(c)(8), 287.8(c)(2)(ii); *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *28. Following them costs nothing beyond what the law already requires. The Government's legitimate interest is in securing appearance, and the I-213 records that Petitioner had no immigration history and no outstanding wants or warrants. Ex. A at 4–5. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 990–91, 994 (9th Cir. 2017). No one has found Petitioner to be a danger; the August 4 order rests on flight risk alone and expressly "did not reach any determination on . . . danger." Ex. B at 1. And "[t]here is no meaningful countervailing government interest that supports detaining noncitizens like Petitioner without a pre-detention hearing," because "[i]n immigration court, custody hearings are routine and impose a minimal cost." *Villa Cambron*, 2026 WL 2584950, at *6 (citations omitted).

39. The later hearing did not cure the violation. The August 4 hearing, held nearly four months after the arrest, asked whether Petitioner should be released going forward, not whether Respondents had a lawful basis to seize him. Ex. B at 1. That hearing applied the default § 1226(a) standard, under which "[a] § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Bostock*, 2026 U.S. App. LEXIS 22798, at *17 (citing *Rodriguez Diaz*, 53 F.4th at 1197). That framework presupposes that the detainee entered § 1226(a) custody lawfully, on a warrant and followed by an initial custody determination. *See* 8 U.S.C. § 1226(a); *Rodriguez Diaz*, 53 F.4th at 1196–97. A bond hearing belatedly conducted is "'no substitute'" for the initial custody determination that would have established "a lawful basis for detention in the first instance." *Sanchez Marquez*, 2026 WL 2948874, at *6 (quoting *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025))). *Rodriguez Diaz* upheld § 1226(a)'s procedures for a detainee who received them, while expressly preserving as-applied challenges. *Rodriguez Diaz*, 53 F.4th at 1213–14. This claim is independent of Petitioner's statutory claims and supports the prospective relief he seeks against re-detention.

**F. In the Alternative, the August 4 Decision Did Not Apply the Correct Legal Standard.**

40. Even if Petitioner's custody had begun lawfully, the August 4 decision would not justify it. Under *Bostock*, Petitioner "cannot be denied release on bond simply because he entered the United States without being admitted and has been residing here illegally." *Garcia Del Solar*, 2026 WL 3027139, at *2. A hearing that denies bond "by relying on improper, generalized reasons without an individualized assessment of facts relevant to whether Petitioner poses a danger or flight risk" fails to apply § 1226(a) "in good faith." *Id.* Although the Court may not reweigh the evidence, it may assess whether the Immigration Judge "applied the correct legal standard." *Id.* at *2 n.4 (quoting *Martinez*, 124 F.4th at 785). The *Garcia Del Solar* court examined each reason the Immigration Judge gave, asked whether it could lawfully support a flight-risk finding, and then asked what the Immigration Judge failed to consider. *Id.* at *3–4. The August 4 decision rests on two reasons, "surreptitious entry" and an "overly speculative pathway to relief." Ex. B at 1. Neither can support the finding.

**1. *Entry without inspection cannot establish flight risk.***

41. Reliance on "the mere fact of Petitioner's illegal entry is clearly inappropriate, as it would result in mandatory detention for essentially all

noncitizens covered by the Ninth Circuit's holding in *Rodriguez Vazquez*." *Garcia Del Solar*, 2026 WL 3027139, at *3. "[A] noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status." *Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 544 (E.D. Va. 2026) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *3); *see also Tiboko-Tifuh v. Noem*, 2026 WL 1603795, at *2 (S.D. Cal. June 4, 2026) (illegal entry "does not meaningfully distinguish her as unreliable or likely to evade law enforcement") (cited in *Garcia Del Solar*, 2026 WL 3027139, at *3). And "[a] decades-old history of simply entering the United States without permission, or trying to, has been held to be 'legally insufficient to establish a current flight risk that is unmanageable by release on bond.'" *Santiago Morales v. Mullin*, 2026 WL 2678274, at *6 (C.D. Cal. Sept. 11, 2026) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *3). Petitioner's only entry was twenty years ago. Montoya Decl. ¶ 3. A "surreptitious entry" in 2006 says nothing about whether Petitioner will appear for his individual hearing on November 30, 2026.

**2. *An unadjudicated application for relief is not evidence of flight risk.***

42. The Immigration Judge's reliance on an "overly speculative pathway to relief," Ex. B at 1, is the reasoning *Garcia Del Solar* rejected. "[T]he IJ's reliance on Petitioner's 'speculative' claim for relief for removal is itself speculative, as the claim apparently has not yet been reviewed or decided. Moreover, the IJ failed to explain why this factor suggests, in the context of this case, that Petitioner would be particularly unlikely to appear for future proceedings." *Garcia Del Solar*, 2026 WL 3027139, at *4. An Immigration Judge "cannot simply presume that unresolved claims are 'speculative' and indicative of flight risk" without a showing that this would "make the noncitizen unlikely to appear at future court proceedings." *N.A. v. Warden, Adelanto Det. Facility*, 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4); *see also Gonzalez Reyes v. Rios*, 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026) ("[T]he immigration judge provided no rationale as to why Petitioner would . . . be more likely to flee rather than appear in immigration court to pursue his claims for relief from removal proceedings.") (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4). The August 4 order offers no such explanation. Ex. B at 1. And Petitioner has since filed his application for cancellation of removal, which rests on twenty years of residence and the hardship his removal would cause his three United States-citizen children, and his individual hearing is

set for November 30, 2026. Ex. C; Ex. D at 1; Montoya Decl. ¶¶ 12–13. A person with a pending application and a hearing date has every reason to appear.

**3. *The decision made no individualized assessment.***

43. The August 4 order recites that the Immigration Judge "considered all flight risk factors," but identifies only the two factors addressed above. Ex. B at 1. It does not mention Petitioner's twenty years of residence, his three United States-citizen children, the absence of any criminal conviction, the negative check for wants and warrants, or any alternative to detention. *Id.* at 1–2. An Immigration Judge who denies bond "without ever addressing the extent to which these close family ties might make Petitioner less likely to abscond" has not made an individualized assessment. *Garcia Del Solar*, 2026 WL 3027139, at *4. And the "consideration of the individual's financial circumstances, as well as of possible alternative release conditions, [is] necessary" to a constitutionally adequate custody determination. *Hernandez*, 872 F.3d at 990–91. "A minimal hope of a favorable result in removal proceedings, an inability to legally work, and a reluctance to file income tax returns are present for most immigration litigants without lawful status and, were they a sufficient basis for continuing to detain noncitizens who are seeking relief from removal, then almost no one would be entitled to release." *Fletes-Velasquez v. Hernandez*, 2026 WL 1871890, at *4 (W.D. Wash. June 30,

2026) (citations omitted) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4). By "relying mainly on general factors common to the class at issue in *Rodriguez Vazquez*," the decision "effectively condemns" Petitioner to mandatory detention. *Garcia Del Solar*, 2026 WL 3027139, at *4.

**G. Exhaustion Is Not Required.**

44. Exhaustion is not statutorily required under § 2241; it is prudential and may be waived where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (as quoted in *Cardenas*, 2026 WL 2722730, at *2); *see Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Counts One through Three are not exhaustible at all. An Immigration Judge's custody redetermination asks only whether the noncitizen presents a danger or flight risk, *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (as cited in *Rodriguez Diaz*, 53 F.4th at 1197), and neither the Immigration Judge nor the Board can decide whether ICE's warrantless arrest complied with § 1357(a)(2) or whether custody commenced as § 1226(a) requires. For that reason, administrative remedies are "inadequate and futile." *Cardenas*, 2026 WL 2722730, at *2. A post-deprivation bond hearing "would not address the propriety of Petitioner's

claim that [he] was not afforded constitutionally adequate procedural safeguards prior to the deprivation of h[is] liberty interest." *Id.* (quoting *R.N.G. v. Semaia*, No. EDCV 26-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026)).

45. Petitioner did not appeal the August 4 order to the Board of Immigration Appeals, and no exhaustion requirement bars this Petition. Ex. D at 2. A Board appeal concerns only the Immigration Judge's exercise of bond discretion; it cannot adjudicate the legality of the April 8 arrest or provide the relief sought on Counts One through Three. And a detained petitioner "would likely need to wait at least six months in detention for the BIA to issue a decision on his appeal." *Herman v. DHS*, No. 5:26-cv-01995-MBK, 2026 WL 1723960, at *6 (C.D. Cal. June 12, 2026). Petitioner has already been detained for more than six months. Montoya Decl. ¶ 14.

46. A court in this District waived exhaustion of a materially identical challenge to an Immigration Judge's bond decision, "because Petitioner would be significantly harmed if forced to wait for appellate review, and no appellate record or agency expertise is needed to review the issues presented here." *Garcia Del Solar*, 2026 WL 3027139, at *2 n.4 (citing *Laing*, 370 F.3d at 1000). The same is true of Count Four, which asks only whether the Immigration Judge applied the correct legal standard on the record the Immigration Judge had.

47. Nor would a Board appeal permit exhaustion of Petitioner's alternative challenge to the burden of proof. The Immigration Judge applied the default allocation that governs § 1226(a) custody hearings, which derives from the BIA's own precedent. *See Rodriguez Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)). The Board applies that same framework. Count Five's challenge is that the allocation itself violated due process as applied to him, and "the BIA cannot directly review the constitutionality of an immigration judge's determination." *Chacon v. Mullin*, No. 5:26-cv-03294-RAO, 2026 WL 2127177, at *5 (C.D. Cal. July 21, 2026). In *Chacon*, BIA review of whether the Immigration Judge correctly applied the existing standard "may provide the relief that Petitioner [sought]." *Id.* Here, by contrast, the alternative relief Petitioner seeks is a new hearing under a different standard, one the Board has no authority to impose.

### H. The Supreme Court's Stay in *Noem v. Vasquez Perdomo* Does Not Govern These Claims.

48. The Supreme Court's stay addressed a different order, a different stage of the encounter, and a different legal standard: the "July 11, 2025 order" restricting brief investigative stops under the Fourth Amendment's reasonable-suspicion standard. *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 1 (2025)

(mem.); *id.* at 1–3 (Kavanaugh, J., concurring). The concurrence described reasonable suspicion as "a lesser requirement than probable cause" that "means only that immigration officers may briefly stop the individual and inquire about immigration status." *Id.* at 3 (Kavanaugh, J., concurring). Reasonable suspicion of illegal presence and likelihood of escape "are different analyses and should not always involve the same factors." *Vasquez Perdomo*, *Preliminary Injunction Order*, 2026 WL 2751388, at *22 n.21. Petitioner does not challenge the initial stop. **He challenges the warrantless arrest that followed it.**

## I. Immediate Release Is the Appropriate Remedy.

### 1. *Release is the traditional habeas remedy and restores the status quo.*

49. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (as quoted in *Cardenas*, 2026 WL 2722730, at *2). "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (as quoted in *Abdirahman A. v. Blanche*, No. 26-cv-3086 (ECT/DLM), 2026 WL 2824339, at *2 (D. Minn. Sept. 21, 2026)). Accordingly, "[r]elease is the appropriate remedy for unlawful arrest." *Abdirahman A.*, 2026 WL 2824339, at *2. Release also restores

the status quo, "the last uncontested status which preceded the pending controversy," which here is Petitioner's liberty before April 8, 2026. *Borisova v. Mullin*, No. 5:26-cv-04156-MAR, 2026 WL 2677302, at *4 (C.D. Cal. Sept. 11, 2026) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). "[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up) (as quoted in *Sanchez Marquez*, 2026 WL 2948874, at *7).

**2. *Courts order release where a warrantless arrest violated § 1357(a)(2) or § 1226(a).***

50. The closest decision is *Sanchez Marquez*, which ordered the immediate release of a petitioner arrested without a warrant during an operation targeting someone else. *Sanchez Marquez*, 2026 WL 2948874, at *1, *6–7. *Valtierra Moreno* is also closely analogous. There, as here, the petitioner had entered without inspection and was arrested without a warrant. *Valtierra Moreno*, 2026 WL 2844961, at *1. The court found that the Form I-213 "does not indicate that Respondents had a warrant for Petitioner's arrest or that there was reason to believe that Petitioner was likely to escape before a warrant could be obtained." *Id.* at *3. **Finding "no basis on this record for the Court to infer likelihood of**

**escape before a warrant could be obtained," the court ordered immediate release.** *Id.*

51. Other courts agree. *See Villa Cambron*, 2026 WL 2584950, at *4 (warrantless arrest of a long-time resident who "did not attempt to flee or resist arrest"); *Diaz Escalante*, 2026 WL 2364792, at *4 ("Petitioner's detention without a warrant violated Section 1357(a)(2) and is grounds for immediate release."); *Tellez-Serrano*, 2026 WL 2574829, at *1, *4–6; *Zurita Navarro*, 2026 WL 2294963, at *2–3.

52. Petitioner's record presents the same defect. His I-213 identifies another person as the target of the operation and records only that officers believed Petitioner matched the target's description and that he "was in the U.S. illegally and was amenable to enforcement action." Ex. A at 4–5. It records no likelihood-of-escape determination, and no pre-arrest warrant has been produced. Montoya Decl. ¶¶ 8, 10.

**3. *Chacon and Bilokumsky do not bar release.***

53. Respondents may rely on *Chacon v. Mullin*, which, assuming a defect in the initiation of custody, held that release was unavailable under *United States ex rel. Bilokumsky v. Tod* because a petitioner "is not to be discharged for defects in the original arrest or commitment" if "sufficient ground for his detention by the

government is shown." *Chacon*, 2026 WL 2127177, at *3 (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)) (citation modified). That condition was met in *Chacon*, where the government proved flight risk and danger by clear and convincing evidence, *id.* at *1–2, and is absent here, where the only later finding placed the burden on Petitioner and rested on reasons courts have held improper. Ex. B at 1. After *Bostock*, another court in this District expressly "disagree[d]" with *Chacon*, explaining that a petitioner "not challenging a removal order but rather the legality of his detention during removal proceedings" may obtain release because "[a] lack of statutory authority for his warrantless arrest renders that detention illegal and justifies release from custody." *Villa Cambron*, 2026 WL 2584950, at *4 n.2. Nor does *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) (as cited in *Abdirahman A.*, 2026 WL 2824339, at *2), help Respondents: "the availability of habeas relief in district court and the applicability of the exclusionary rule in immigration court are unrelated issues." *Abdirahman A.*, 2026 WL 2824339, at *2.

**4. *Courts order release where detention began without due process.***

54. Courts in this District also order release where detention began without constitutionally required process. In *Ramirez-Serna*, the court held that the warrantless arrest of a long-time resident whom ICE had mistaken for its target,

"without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights," and that "'Petitioner's release is necessary to return him to the status quo.'" *Ramirez-Serna v. Mullin*, No. 5:26-cv-02384-DTB, 2026 U.S. Dist. LEXIS 118324, at *17–18 (C.D. Cal. May 28, 2026) (quoting *Nazarian v. Noem*, 2025 U.S. Dist. LEXIS 229051, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025)). *Reyes* likewise held that "the warrantless arrest and hearingless detention here violated federal due process," warranting release. *Reyes*, 2026 U.S. Dist. LEXIS 154708, at *5–6; *see also Villa Cambron*, 2026 WL 2584950, at *5–7; *Borisova*, 2026 WL 2677302, at *4–5; *Gaitan v. Semaia*, No. 5:26-cv-05037-AJR, 2026 WL 2808200, at *3–4 (C.D. Cal. Sept. 18, 2026); *Cardenas*, 2026 WL 2722730, at *3–5. Petitioner acknowledges that the liberty interests in *Borisova*, *Gaitan*, and *Cardenas* arose from a prior release or the Government's knowing decision not to detain, and that the interest in *Villa Cambron* rested in part on a pending DACA renewal. Petitioner's interest rests on twenty years of residence and family ties, the kind of interest recognized in *Reyes* and *Ramirez-Serna*. Once a due process violation is established, the remedial reasoning of all of these decisions applies equally. *See also Xiquin Hernandez v. Mullin*, No. 5:26-cv-04631-ACCV, 2026 WL 2693880, at *2 (C.D. Cal. Sept. 13, 2026) (ordering release upon

re-detention where Respondents did not oppose the petition, given "the absence of procedural safeguards accorded to Petitioner in advance of" his re-detention).

**5. *A § 1226(a) bond hearing is not the ceiling, even after an Immigration Judge's denial.***

55. This District has rejected the argument that a first-time detainee is limited to a bond hearing. In *Cardenas*, Respondents argued that because it was the petitioner's first immigration detention, "she is entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), but is not entitled to release." *Cardenas*, 2026 WL 2722730, at *1. The court nevertheless held that a post-deprivation bond hearing was inadequate and ordered immediate release. *Id.* at *2, *5. "Providing Petitioner a bond hearing would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now." *Diaz Escalante*, 2026 WL 2364792, at *4; *accord Borisova*, 2026 WL 2677302, at *5. Courts have likewise rejected the Government's position that a petitioner whose custody began without the required process should simply "go ask for a bond hearing" or "wait until the six-month mark." *Tellez-Serrano*, 2026 WL 2574829, at *4–5; *Dominguez*, 2026 WL 2574835, at *4–5.

56. The Immigration Judge's August 4 denial does not change the analysis. **In *Ramirez Perez*, an Immigration Judge denied bond after "determining petitioner posed a flight risk and danger to the community," yet the court recommended immediate release because the arrest was made without a warrant or any pre-arrest escape determination.** *Ramirez Perez*, 2026 WL 2123306, at *2, *4. Flight risk assessed in August, with the burden on Petitioner, and likelihood of escape assessed by officers in April before an arrest are different inquiries; the later finding cannot become the officers' missing pre-arrest determination. And because "[t]he plain language of § 1226(a) makes 'a warrant issued by the Attorney General' a predicate to a lawful arrest and any subsequent bond hearing," where the arrest did not comply, "it would make little sense to limit [the petitioner's] relief pursuant to that statute." *Abdirahman A.*, 2026 WL 2824339, at *2.

57. Where, as here, the Immigration Judge's flight-risk finding does not apply the correct legal standard, release is the appropriate remedy. "Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Garcia Del Solar*, 2026 WL 3027139, at *4 (quoting *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026)); *see also Gonzalez*

*Reyes*, 2026 WL 2190830, at *7 (ordering immediate release where the IJ abused his discretion in finding flight risk) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4); *Fletes-Velasquez*, 2026 WL 1871890, at *4 (same) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same) (cited in *Garcia Del Solar*, 2026 WL 3027139, at *4). The *Garcia Del Solar* court ordered release "subject only to reasonable, noncustodial conditions of release that are no more restrictive than needed to ensure his appearance as required." *Garcia Del Solar*, 2026 WL 3027139, at *5.

**6. *Re-detention should require notice and a pre-deprivation hearing.***

58. Courts ordering release have also required that, before re-detention, the Government provide notice and a pre-deprivation hearing. In *Sanchez Marquez*, the court barred re-detention "absent a hearing before a neutral decisionmaker at which the Government must show material changed circumstances justifying his detention." *Sanchez Marquez*, 2026 WL 2948874, at *7. In *Valtierra Moreno*, the court required that "such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." *Valtierra Moreno*, 2026 WL 2844961, at *3 (quoting *Mourey v. Bowen*, 2026 WL 467567, at *6 (C.D. Cal. Jan.

31, 2026)) (internal quotation marks, brackets, and citation omitted). The same protection issued in *Reyes*, 2026 U.S. Dist. LEXIS 154708, at *6; *Ramirez-Serna*, 2026 U.S. Dist. LEXIS 118324, at *21–22; *Villa Cambron*, 2026 WL 2584950, at *7; *Borisova*, 2026 WL 2677302, at *5–6; and *Gaitan*, 2026 WL 2808200, at *4–5. In *Diaz Escalante*, the court further enjoined respondents from "placing Petitioner in an Alternative to Detention program" or "placing an ankle monitor on Petitioner upon his release." *Diaz Escalante*, 2026 WL 2364792, at *5. Such an injunction is warranted under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006): Petitioner has suffered irreparable injury, damages are inadequate, and the balance of equities favors "merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner." *Valtierra Moreno*, 2026 WL 2844961, at *4.

59. *Rodriguez Diaz* does not foreclose this relief. That decision upheld § 1226(a)'s procedures for a detainee who had received them, but the Ninth Circuit expressly declined to "foreclose all as-applied challenges to § 1226(a)'s procedures," because "[d]ue process is a flexible concept that varies with the particular situation." *Rodriguez Diaz*, 53 F.4th at 1213 (quoting *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (quoting *Shinault*, 782 F.3d at 1057)). The Government there conceded "that its position here does not mean detained aliens

can never bring as-applied due process challenges to § 1226(a).” *Id.* at 1213–14. The court rejected the detainee’s as-applied challenge because he “ha[d] already received far more process” than detainees in prior cases, and because “he ha[d] not pointed to any individualized circumstances warranting additional procedures, or any unconstitutional failure of the § 1226(a) procedures in his case.” *Id.* at 1213. Petitioner points to both. Respondents arrested him without a warrant and without the individualized likelihood-of-escape determination § 1357(a)(2) requires; and made no initial custody determination that has been produced. Montoya Decl. ¶¶ 8, 10. He received no custody hearing until August 4, 2026, nearly four months after his arrest. Ex. B at 1. Nor is this a case in which “deficiencies in individual § 1226(a) proceedings . . . may be redressable through means short of major changes to the burden of proof.” *Rodriguez Diaz*, 53 F.4th at 1214. The deficiency here is not an error within a hearing that a new hearing could correct. It is the absence of every safeguard that should have preceded the hearing.

60. *Bostock* did not disturb these limits. It described the default § 1226(a) bond standard, citing *Rodriguez Diaz*, while deciding which detention statute applies. *Bostock*, 2026 U.S. App. LEXIS 22798, at *17. And *Rodriguez Diaz* had “no occasion to decide whether *Singh* remains good law in any respect following *Jennings*.” *Rodriguez Diaz*, 53 F.4th at 1202 n.4. Courts in this District have since

continued to order release of noncitizens whose detention began unlawfully, and to bar re-detention absent a pre-deprivation hearing at which the Government proves flight risk or danger by clear and convincing evidence. *Valtierra Moreno*, 2026 WL 2844961, at *3–4; *Borisova*, 2026 WL 2677302, at *5–6; *Gaitan*, 2026 WL 2808200, at *4–5. Courts in this District have also recognized that "the Ninth Circuit has not overruled *Singh* or foreclosed as-applied challenges to Section 1226(a)'s procedures," and that courts "have typically" required clear and convincing evidence "when ordering the release of noncitizens who had been illegally detained and preventing the noncitizen's re-detention." *Nola*, 2026 U.S. Dist. LEXIS 106210, at *21. Under *Singh*, that standard is appropriate because "it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." *Singh*, 638 F.3d at 1203–04 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)).

**7. *In the alternative, the Court should order a new custody hearing at which Respondents bear the burden by clear and convincing evidence.***

61. In the alternative, if the Court declines to order Petitioner's immediate release, it should grant the Petition in part and order a new custody hearing at

which Respondents bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community. The August 4 hearing placed the burden on Petitioner, relying on *Rodriguez Diaz* and *Matter of Guerra*. Ex. B at 1. That allocation reflects the default § 1226(a) rule. *See Bostock*, 2026 U.S. App. LEXIS 22798, at *17 (citing *Rodriguez Diaz*, 53 F.4th at 1197). **But *Bostock* described the default § 1226(a) rule while deciding which detention statute applies, and *Rodriguez Diaz* expressly declined to "foreclose all as-applied challenges to § 1226(a)'s procedures."** *Rodriguez Diaz*, 53 F.4th at 1213.

62. **This is the as-applied challenge *Rodriguez Diaz* reserved, and it rests on facts the Immigration Judge did not consider.** *Rodriguez Diaz* held that the default allocation adequately protected the detainee there because, "when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination," followed by "numerous levels of review." *Id.* at 1209–10. "These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210. Petitioner received none of those protections. Respondents arrested him without a warrant or any escape determination, and no initial custody determination has been produced. Montoya Decl. ¶¶ 8, 10. These are the "individualized circumstances warranting additional procedures" and the

"unconstitutional failure of the § 1226(a) procedures in his case" that the detainee in *Rodriguez Diaz* could not identify. 53 F.4th at 1213.

63. Petitioner's detention has also become prolonged. He has been detained since April 8, 2026, more than six months. Montoya Decl. ¶ 14. Courts in this District have recognized that *Singh* "concerned hearings in prolonged detention." *Martinez Galindo v. Mullin*, No. 5:26-cv-05943-DFM, 2026 WL 3153311, at *3 (C.D. Cal. Oct. 21, 2026). And courts have recognized that "the Ninth Circuit has not overruled *Singh* or foreclosed as-applied challenges to Section 1226(a)'s procedures," and have required the Government to bear the burden by clear and convincing evidence "when ordering the release of noncitizens who had been illegally detained and preventing the noncitizen's re-detention." *Nola*, 2026 U.S. Dist. LEXIS 106210, at *21. Petitioner does not contend that the length of his detention alone shifts the burden. But prolonged detention that began with an unlawful arrest, without any initial custody determination, and that has been maintained by a decision resting on improper reasons, presents the as-applied circumstances *Rodriguez Diaz* reserved. In those circumstances, "'it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual . . . is so significant.'" *Nola*, 2026 U.S. Dist. LEXIS 106210, at *21 (citations omitted) (quoting *Singh*, 638 F.3d at 1203–04).

64. A new hearing is an established remedy. "Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Id.* at *29 (quoting *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026)). At any new hearing, Respondents should be required to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the safety of the community. *See Valtierra Moreno*, 2026 WL 2844961, at *4.

**J. Respondents Should Be Ordered to Lodge the Complete Arrest and Custody Record.**

65. Under 28 U.S.C. § 2243, Respondents' return must certify "the true cause of the detention," and Rules 1(b), 5, and 7 of the Rules Governing Section 2254 Cases authorize the Court to require Respondents to attach and expand the record. Where Respondents assert § 1226(a) authority for a warrantless arrest, the true cause includes any warrant and its date and time of issuance, any initial custody determination, and any documentation of a pre-arrest escape determination. A court in this District has ordered Respondents to file a petitioner's

Form I-213 within 24 hours. *Xiquin Hernandez*, 2026 WL 2693880, at *1. In *Sanchez Marquez*, the court authorized Respondents to file "evidence to support their position," and when they could not show a risk-of-escape analysis or initial custody review after "two opportunities," it found the violations established. *Sanchez Marquez*, 2026 WL 2948874, at *2, *6. Where an I-213 references a warrant or Notice to Appear that Respondents do not produce, courts have ordered release. *Villa Canales*, 2026 WL 2582132, at *1; *Zurita Navarro*, 2026 WL 2294963, at *2–3.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2): Warrantless Arrest Without a Pre-Arrest Likelihood-of-Escape Determination

66. Petitioner incorporates the preceding paragraphs.

67. Petitioner was arrested without a warrant on April 8, 2026. Section 1357(a)(2) permits a warrantless arrest only where the officer has reason to believe the person is unlawfully present and is likely to escape before a warrant can be obtained. The I-213 records only that officers believed Petitioner matched the description of another person, and that he "was in the U.S. illegally and was amenable to enforcement action." Ex. A at 4–5. It records no likelihood-of-escape determination.

68. Respondents therefore lacked statutory authority to take Petitioner into warrantless custody, and his detention violates the laws of the United States. 28 U.S.C. § 2241(c)(3).

**COUNT TWO**
**Violation of 8 U.S.C. § 1226(a) and Implementing Regulations: Custody Commenced Without a Warrant or Initial Custody Determination**

69. Petitioner incorporates the preceding paragraphs.

70. To the extent Respondents contend that Petitioner is detained under § 1226(a), his custody had to commence on a warrant or lawful warrantless arrest, followed by an initial custody determination and notice of the right to seek redetermination. 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Respondents have produced no Form I-200, no Form I-286, and no record of an initial custody determination, and never initiated any custody review. Montoya Decl. ¶ 10.

71. Petitioner's custody was therefore unlawful from its inception, and the later hearing, which Petitioner rather than Respondents initiated, did not cure it.

**COUNT THREE**
**Violation of the Fifth Amendment Due Process Clause: Deprivation of Liberty Without the Process Due at the Inception of Custody**

72. Petitioner incorporates the preceding paragraphs.

73. Petitioner has a protected liberty interest in freedom from physical detention, strengthened by twenty years of residence and his three United

States-citizen children. Montoya Decl. ¶¶ 3–4. Respondents deprived him of that liberty without a warrant, without a pre-arrest likelihood-of-escape determination, and without an initial custody determination. Those safeguards were feasible, and their absence violated due process. This Count is independent of Counts One and Two.

**COUNT FOUR (IN THE ALTERNATIVE)**

**Violation of 8 U.S.C. § 1226(a) and the Fifth Amendment Due Process Clause: Failure to Apply the Correct Legal Standard at the August 4, 2026 Custody Hearing**

74. Petitioner incorporates the preceding paragraphs.

75. On August 4, 2026, the Immigration Judge denied bond on flight risk based on "the surreptitious entry into the United States and overly speculative pathway to relief," without addressing Petitioner's twenty years of residence, his three United States-citizen children, or any alternative to detention, and without reaching danger. Ex. B at 1.

76. The Immigration Judge therefore failed to apply the correct legal standard and to make the individualized assessment § 1226(a) and the Due Process Clause require, and no lawful basis supports Petitioner's continued detention. Petitioner pleads this Count in the alternative.

**COUNT FIVE (IN THE ALTERNATIVE)**

**Violation of the Fifth Amendment Due Process Clause, As Applied: Placement of the Burden of Proof on Petitioner**

77. Petitioner incorporates the preceding paragraphs.

78. As applied to Petitioner, due process required that, at any custody hearing, Respondents bear the burden of proving by clear and convincing evidence that his detention is necessary to prevent flight or danger to the community.

79. Respondents arrested Petitioner without a warrant or a likelihood-of-escape determination, and no initial custody determination has been produced. He received no custody hearing for nearly four months, and has now been detained for more than six months. At his August 4, 2026 hearing, the Immigration Judge placed the burden on Petitioner. Ex. B at 1; Montoya Decl. ¶¶ 8, 10, 14.

80. The August 4, 2026 hearing therefore violated the Fifth Amendment as applied to Petitioner. Petitioner pleads this Count in the alternative to his request for immediate release.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Issue an order directing Respondents to show cause why the writ should not be granted, and set an expedited briefing schedule;

(c) Order Respondents not to remove or transfer Petitioner outside the jurisdiction of this Court pending resolution of this Petition;

(d) Order Respondents to lodge with their response the complete arrest and custody record, including any Form I-200 (with its date and time of issuance), any Form I-286, any record of an initial custody determination, the Notice to Appear, and all documentation of any pre-arrest likelihood-of-escape determination; and, if any such document does not exist, to so state in a sworn declaration identifying the search conducted;

(e) Declare that Respondents arrested Petitioner on April 8, 2026 without statutory authority under 8 U.S.C. § 1357(a)(2), that his custody commenced without the warrant and initial custody determination required by 8 U.S.C. § 1226(a), and that his detention without the process due at the inception of custody violated the Fifth Amendment; and, in the alternative, that the Immigration Judge failed to apply the correct legal standard at the August 4, 2026 custody hearing;

(f) Grant the writ and order Respondents to release Petitioner immediately, and to return all property and documents taken from him;

(g) In the alternative, if the Court declines to order Petitioner's immediate release, order Respondents to provide Petitioner, within seven (7) days, a new custody hearing before an Immigration Judge at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the safety of the community; and, if no such hearing is held within that time, order Petitioner's release;

(h) Enjoin Respondents from re-detaining Petitioner absent written notice and a pre-deprivation hearing before a neutral decisionmaker at which Respondents bear the burden of establishing, by clear and convincing evidence, a material change in circumstances and that detention is necessary to prevent danger to the community or flight;

(i) Order Respondents to file a notice of compliance within three (3) days of entry of judgment; and

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

<u>/s/ Cesar O. Montoya (SBN: 320291)</u>
MCM LAW GROUP, P.C.

206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 22, 2026